

July 18, 2018

KAREEM N HALL
60 W 144TH ST
RIVERDALE, IL 60827

**Re:**  **Customer Name:** KAREEM N HALL
**Account Number:**
**Property Address:** 60 W 144TH STREET
RIVERDALE, IL 60827

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS), the servicer on the above referenced account, is pleased to inform you that you have been approved for a lien modification. SPS acknowledges that the mortgage loan related to the above-referenced property has been discharged. Even though your personal liability on the note is discharged, the terms of the mortgage remain in effect. The owner of the mortgage, as lien holder, continues to have an enforceable lien on the property. The enclosed lien modification agreement does not constitute a reaffirmation of debt under United States Code Title 11.

Enclosed are two copies of your Lien Modification Agreement (Agreement). Please read the Agreement carefully and be certain you fully understand the new terms before signing and returning it to SPS. We encourage you to make and keep copies of the modification documents for your records.

You must sign both copies of the Agreement and return the copies no later than August 17, 2018. Please fax a copy of the signed Agreement to 801-269-4459 and mail both copies of the original signed Agreement to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

Important! This offer may expire if the signed Agreement and required certified funds are not received by the due date.

As detailed in the enclosed Agreement, your new monthly payment of $185.40 is due on the 1st of each month beginning with the September 1, 2018 payment. This new monthly payment may include additional escrow payments for property taxes and homeowner's insurance as provided by the Agreement. It is important that you make the modified payments on time and in the correct amount. It may take an additional month for our monthly statements to reflect the modified loan terms.

**TAX CONSEQUENCES OF LOAN MODIFICATIONS.** There may be income tax consequences related to this loan modification. Because you will be responsible for paying any income tax due as a result of this loan modification, you may wish to consult a tax advisor before accepting this loan modification.

**Flood Notice**

If your modification includes an extension of the maturity date for your mortgage and the property is located in a Special Flood Hazard Area (SFHA), as part of this payment extension process, we are required by law to send you another flood notice confirming your property's flood status. We are required to do so even though we periodically check to ensure that you have flood insurance. As a result, if you receive this additional notice from us, all you need to do is to immediately sign the Notice of Special Flood Insurance Acknowledgment as required, and return it to us. The modification agreement will not be processed until the signed acknowledgment is returned.

Please also note that you are responsible for continuing any insurance coverage on your property beyond the original maturity date of your mortgage.



MA001 1662.V.2.1

If you have any questions or concerns, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición  para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**

**LIEN MODIFICATION AGREEMENT**

This Lien Modification Agreement ("Agreement") is effective August 1, 2018, between KAREEM HALL, ("Property Owner") and Select Portfolio Servicing, Inc., acting on behalf of the lien holder, ("Lien Holder"). If Property Owner's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the lien documents dated May 1, 2006, securing the original principal sum of $100,000.00 ("Lien Documents"), which encumber the real and personal property described in the Lien Documents (defined in the Lien Documents as the "Property"), known as

    60 W 144TH STREET
    RIVERDALE, IL 60827

*Lien Holder acknowledges that the mortgage loan related to the Property has been discharged. Even though the Property Owner's personal liability on the note is discharged, the terms of the Lien Documents remain in effect. Lien Holder continues to have an enforceable lien on the Property. This lien modification agreement does not constitute a reaffirmation of debt under United States Code Title 11.*

1. <u>Property Owner Representations and Covenants.</u>  Property Owner certifies, represents, covenants, and agrees as follows:

    a. Property Owner is experiencing a financial hardship, and as a result, (i) is in default under the Lien Documents or default is imminent, and (ii) Property Owner does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    b. There has been no impermissible change in the ownership of the Property since Property Owner signed the Lien Documents.

    c. If requested by Lien Holder, Property Owner has provided documentation for all income that they receive.

    d. All documents and information Property Owner has provided to Lien Holder in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

    e. Property Owner has made or will make all payments required under a trial modification plan or lien workout plan, if applicable.

    f. The property is neither in a state of disrepair, nor condemned.

    g. Property Owner is not a party to any litigation involving the Lien Documents, except to the extent the Property Owner may be a defendant in a foreclosure action.

2. <u>The Modification</u>. If Property Owner's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Lien Documents will automatically become modified on August 1, 2018 (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Property Owner understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect.  The first modified payment will be due on September 1, 2018.

    a. The Maturity Date will be: July 1, 2039.

    b. The modified principal balance to satisfy the Lien will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lien Holder but not previously credited to the account associated with the Lien Documents The new principal balance to satisfy the Lien will be $60,644.83 (the "New Principal Balance").  Property Owner understands that by agreeing to add the Unpaid Amounts to the outstanding balance to satisfy the Lien, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.  Property Owner also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding balance to satisfy the Lien, which would not happen without this Agreement.

    c. $16,283.63 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance.  Property Owner will not pay interest or make monthly payments on the Deferred Principal Balance.  The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $44,361.20. Interest at the rate of 4.000% will begin to accrue on the Interest Bearing Principal Balance as of August 1, 2018 and the first new monthly payment on the Interest Bearing Principal Balance will be due on September 1, 2018. The payment schedule for the modified Lien Documents is as follows:



| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-251 | 4.000% | N/A | $185.40 | $0.00 | $185.40 | September 1, 2018 | 251 |

**A final balloon payment on the Interest Bearing Principal Balance of $29,662.43 is due on the Maturity Date.**

The Deferred Principal Balance of $16,283.63 will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 2.c shall supersede any provisions to the contrary in the Lien Documents, including but not limited to, provisions for an adjustable or step interest rate.

BALLOON NOTICE. In order to reach an affordable payment, we extended your amortization term, which is the rate or speed by which your mortgage is calculated to be paid off; however, your maturity term, which is the period of time until your mortgage becomes due and payable, could not be fully extended to an equal term. This is because the investor on your account allows us to change your amortization term but does not allow us to change the maturity term to match. As a result of the difference between these two periods, there will be an amount due of $29,662.43 on the date your lien matures on July 1, 2039. The amount outstanding at maturity is in addition to your monthly scheduled payment and the principal forbearance of $16,283.63 that you received as part of your modification.

The monthly payment under this modification does not include the collection of funds for property taxes and homeowner's insurance (non-escrowed). Therefore Property Owner is responsible for the payment of taxes and insurance as required under the Loan Documents. If Property Owner fails to pay property taxes, the taxing entity may sell the property and Property Owner could lose their home. If Property Owner fails to pay homeowner's insurance, the property may not be protected from loss or damage. Property Owner is obligated under the Mortgage to keep the home properly insured and to pay taxes on time.

3. <u>Other Agreements</u>. Property Owner and Lien Holder also agree to the following:

   a. This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Property Owner previously entered into with Lien Holder.

   b. The Lien Documents, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   c. All terms of the Lien Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the terms contained in the Lien Documents.

   d. All covenants, agreements, and requirements of the Lien Documents, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments under the Lien Documents remain in full force and effect.

   e. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Lien Documents as amended by this Agreement, within ten (10) days after receipt of the Lien Holder's request, Property Owner will execute, acknowledge, initial, and deliver to the Lien Holder any documentation the Lien Holder deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Property Owner fails to do so, Property Owner will be liable for any and all loss or damage which the Lien Holder reasonably sustains as a result of Property Owner's failure. At Lien Holder's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Property Owner elects not to sign any such corrective documentation, the terms of the original Lien Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Property Owner will not be eligible for a modification.

   f. The mortgage insurance premiums, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Property Owner may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

MA001 1662.V.2.1

g. As of the Modification Effective Date, notwithstanding any other provision of the Lien Documents, Property Owner agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lien Holder's prior written consent, the Lien Holder may, at its option, require immediate payment in full of all sums secured by the Lien Documents. However, the Lien Holder shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer.  If the Lien Holder exercises this option, the Lien Holder shall give Property Owner notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which all sums secured by the Lien Documents must be paid.  If these sums are not paid prior to the expiration of this period, the Lien Holder may invoke any remedies permitted by the Lien Documents without further notice or demand on Property Owner.

h. As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Mortgage.  In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

i. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

j. If Property Owner is in bankruptcy upon execution of this document, Property Owner will cooperate fully with Lien Holder in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. Property Owner understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Lien Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

k. In agreeing to the changes to the Lien Documents as reflected in this Agreement, Lien Holder has relied upon the truth and accuracy of all of the representations made by Property Owner, both in this Agreement and in any documentation provided by or on behalf of Property Owner in connection with this Agreement. If Lien Holder subsequently determines that such representations or documentation were not truthful or accurate, Lien Holder may, at its option, rescind this Agreement and reinstate the original terms of the Lien Documents as if this Agreement never occurred.

**TAX CONSEQUENCES OF LOAN MODIFICATIONS.** There may be income tax consequences related to this loan modification. Because you will be responsible for paying any income tax due as a result of this loan modification, you may wish to consult a tax advisor before accepting this loan modification.

The Property Owner(s) and Lien Holder have signed this Agreement as of the Effective Date.

_____          _____
Property Owner Signature:                                                                                      Date:

_____          _____
Property Owner Signature:                                                                                      Date:

MA001 1662.V.2.1